[No. C029422. Third Dist. Nov. 30, 1998.]

TERRY A. SERAFINI, Petitioner, v.
THE SUPERIOR COURT OF EL DORADO COUNTY, Respondent;
SYED KHADIR, Real Party in Interest.

**[Opinion certified for partial publication.\*]**

\*See footnote 1, *post*, page 74.

**COUNSEL**

Wilke, Fleury, Hoffelt, Gould & Birney, Scott L. Gassaway, Alan G. Perkins, Cohen & Grigsby and Robert M. Linn for Petitioner.

No appearance for Respondent.

Beyer, Pongratz & Rosen, Beyer & Pongratz, Stephen G. Pongratz, Erik E. Child and Etan E. Rosen for Real Party in Interest.

**OPINION**

**BLEASE, Acting P. J.**—This is an original proceeding in mandate to command the superior court to quash the service of process on Terry A. Serafini, who is not a resident of California, on the ground of lack of jurisdiction.

In the underlying action Syed Khadir, the plaintiff, seeks damages related to an alleged wrongful termination of his employment with RPM Systems. Serafini is an officer and director of an out-of-state corporation which has an ownership interest in and manages RPM Systems.

The superior court denied Serafini's motion to quash the service of summons. Serafini contends Khadir failed to carry his burden of proof

justifying jurisdiction. We agree. In the published portion of the opinion[1] we conclude the contention has merit and we will issue a writ overturning the order denying the motion to quash.

## FACTS AND PROCEDURAL BACKGROUND

Khadir filed a complaint tendering claims of unlawful termination of his employment with RPM Systems and intentional infliction of emotional distress, in part by derogatory remarks concerning Khadir's ethnicity, national origin, and religion. The first amended complaint, extant at the time of the motion to quash (hereafter the complaint), consists of a section styled "General Allegations," and several counts, styled "Cause[s] of Action." The counts commence with parenthetical assertions naming the defendants against whom they are tendered. Serafini is a named defendant in two of the counts. Serafini was served with a copy of the summons and complaint some time between November 17, and December 4, 1997.

The pertinent general allegations of the complaint are as follows. RPM Systems is a business organization doing business in Sacramento. RPM Systems is a subsidiary of Computerpeople, Inc., also doing business in Sacramento.[2] Serafini is a director of Computerpeople, Inc.

The third count of the complaint is styled "Termination in Violation of Public Policy." It alleges that RPM Systems provided false information to the federal government to obtain documentation permitting the employment of persons who were ineligible for employment under federal immigration law and that RPM Systems employed such persons. Khadir complained of these improper practices to RPM Systems and Computerpeople and his employment was terminated as a result.

The fifth count of the complaint names Serafini as a defendant. It is styled "Intentional Infliction of Emotional Distress." It alleges Serafini and Lewis Wheeler owned, operated, and were directors of Computerpeople, Inc. Together with Khadir's supervisor, Paul Freudenberg, Serafini and Wheeler made all of the decisions concerning the conditions of his employment. They continually yelled, swore at, and used vulgar language directed to Khadir. On several different occasions they berated him for being a practicing Muslim; they yelled and swore at Khadir for praying on Friday as is customary for Muslims and said he was stupid and abnormal for not praying

---

[1]The Reporter of Decisions is directed to publish the opinion except part III of the Discussion.

[2]It appears from evidence adduced in the proceedings on the motion to quash that RPM Systems is a joint venture between Computerpeople, Inc., and several individuals, including Khadir, providing services to RPM Systems as employees.

on Sunday. They made remarks weekly of the following ilk: all Muslims or people of Khadir's race were terrorists, that after the Oklahoma bombing many people would be seeking vindication against Muslims, that Khadir should "watch out" and "run for his life." He suffered extreme emotional distress and consequential damage from this conduct.

The sixth count is also addressed to Serafini; it is styled "Violation of Civil Rights and Discrimination." It contains the following essential allegations. Khadir is an East Indian from India and a practicing Muslim. The conduct of Serafini and the other defendants alleged in the foregoing count as well as the termination of Khadir's employment was engaged in with the intent of harassing Khadir on account of his race, religion, and national origin.

Serafini made a special appearance to move for an order quashing service of summons on him on the ground the court lacked jurisdiction. His moving papers include his declaration with the following averments. He is a resident of Pennsylvania. He had been an officer and director of Computerpeople, but had resigned September 12, 1997, before the service of the complaint. During his tenure he maintained his residence, office and domicile in Pennsylvania and not in California. He visited Computerpeople's office in California on only one occasion, in 1994, for two hours, while on a family vacation. His only activity on that occasion was meeting the employees, including, for 10 minutes, Khadir. Other than that meeting, his communications with Khadir were monthly telephone calls usually initiated by Khadir concerning routine personnel issues.

Serafini has no knowledge concerning when or if Khadir was terminated as an employee of Computerpeople or RPM. He was not part of any decision regarding termination of Khadir's employment. He did not discuss Khadir's employment status with Wheeler or Freudenberg or make or participate in any decisions about Khadir's compensation or treatment. He denied all of the allegations of the complaint concerning mistreatment of or discrimination against Khadir insofar as they are directed to himself.

Khadir opposed the motion to quash. His opposition is supported by his declaration which contains the following pertinent averments. Serafini was a manager, director, and half owner of Computerpeople during the employment of Khadir. Khadir and Wheeler, on behalf of Computerpeople, signed a document regarding Khadir's employment in April 1994, a copy of which is attached to his declaration. The document provides, inter alia, that expenditures of RPM Systems exceeding $5,000 required the approval of Computerpeople, which would provide accounting and administration for RPM Systems in Pittsburgh.

Khadir's declaration also avers as follows. When Serafini came to California and met Khadir they discussed the progress and development of the operation and Serafini gave Khadir business advice. Khadir had telephone conversations with Serafini regarding general business matters on a regular basis from the beginning of his employment. They talked on the telephone at least once a month regarding general business matters. The crux of the declaration is the following paragraph: "Defendant SERAFINI, as 50% owner an[d] director, was involved with every major decision of Computerpeople, Inc. Defendant SERAFINI also managed the day to day financial decisions for Computerpeople, Inc., such as obtaining investments, banking decisions, making payments, etc. Defendant SERAFINI also made the personnel decisions for the employees, and directly authorized decisions regarding benefits, medical coverage, payroll, etc. Many California employees of RPM Systems were hired, paid, and given benefits by Defendant SERAFINI, despite Defendant SERAFINI's knowledge that they were illegally employed under the standards set forth by government agencies."

When the matter came on for hearing the trial court continued it and in the interim authorized Khadir to take Serafini's deposition in Pennsylvania. At the deposition, which took place in Florida, Serafini took the position that the questioning was limited to facts having a direct bearing on jurisdiction as to the counts of the complaint in which he was named as a defendant. In light of this, Serafini's attorney instructed him not to answer numerous questions. Khadir took the position that there was no limitation on the scope of the deposition.

An example follows. Khadir asked whether Serafini's job duties included recruitment of employees. Serafini answered that he did not deal with recruitment. Khadir asked who would deal with recruitment. Serafini's counsel instructed him not to answer on the ground the question had no bearing on jurisdiction over him. Khadir said he was asking to determine Serafini's role with Computerpeople. Serafini's counsel replied that since he had no role in recruitment there was no ground for further questions. Khadir's attorney said he was going to ask what Wheeler did. Serafini's counsel said he would instruct Serafini not to answer that question. "You're welcome to depose Lew Wheeler, but that is not pertinent to this deposition."

Serafini testified generally in accord with the declaration that he submitted in support of his motion to quash, as follows. The offices of Computerpeople were "fairly autonomous." He typically reviewed the payroll for RPM Systems and requested that various employees demand payment from those for whom RPM Systems had provided services. His principal expertise

concerned choosing employee benefit packages which generally were similar nationwide. He did not review the benefits packages of individual employees in Sacramento. He had no involvement in handling "employee issues" for RPM Systems.

Serafini had not heard any negative information reflecting upon Khadir. He had no knowledge that Khadir had been harassed, criticized, insulted, or that any comment had been made on his practice of his religion. He received no complaint concerning Khadir taking time off on Friday to engage in religious practice. He was not aware of any attempts to have Khadir leave his employment with RPM Systems. He did not mistrust Khadir.

The matter came on for hearing on March 13, 1998. The trial court said it believed enough facts were developed at the deposition to warrant jurisdiction. The court said that, in the alternative, Serafini sought to avoid jurisdiction by denying the allegations in the complaint; however, when Khadir's counsel attempted to ask questions addressing the merits of the lawsuit at the deposition he was prevented from doing so by legal objections. After the matter was argued the superior court issued an order denying Serafini's motion to quash. Serafini promptly sought writ review in this court and we granted the alternative writ.

## DISCUSSION

Serafini contends the trial court abused its discretion in denying the motion to quash the service of summons. He argues that Khadir failed to carry the burden of proof of showing personal jurisdiction over him. The nature of that burden is set forth in the following passage from *Vons Companies, Inc.* v. *Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) ▮ "When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. (*State of Oregon* v. *Superior Court* (1994) 24 Cal.App.4th 1550, 1557 [29 Cal.Rptr.2d 909].) Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. (*Burger King, supra,* 471 U.S. at pp. 476-477 [85 L.Ed.2d at pp. 543-544].) When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. (*Felix* v. *Bomoro Kommanditgesellschaft* (1987) 196 Cal.App.3d 106, 111 [241 Cal.Rptr. 670, 69 A.L.R.4th 1].) When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. (*Great-West Life Assurance Co.* v.

*Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204 [252 Cal.Rptr. 363].)"

We will examine the disputed claims of jurisdiction from this perspective.

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) Two bases of jurisdiction, general and specific, are at issue. Resolution of the claim of general jurisdiction turns on the nature and extent of Serafini's contacts with the state. Resolution of the claim of specific jurisdiction turns on whether Serafini has caused a tort to be committed in the state. We address these issues seriatim.

I

*General Jurisdiction*

 Khadir claims the facts adduced in the proceedings on the motion to quash show "general jurisdiction" over Serafini within the meaning of case law construing the constitutional reach of jurisdiction. Presumably, Khadir advances his claim of general jurisdiction in order to preclude the necessity, at this preliminary stage of the litigation, of demonstrating facts justifying the exercise of specific jurisdiction, e.g., showing that Serafini breached a duty in tort as to Khadir. General jurisdiction turns on the substantiality of the party's contacts with the forum state. "Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.' (*Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437, 445, 446 [96 L.Ed. 485, 492, 493, 72 S.Ct. 413]; see also *Helicopteros Nacionales de Columbia* v. *Hall* (1984) 466 U.S. 408, 414-415 [80 L.Ed.2d 404, 410-411, 104 S.Ct. 1868] (*Helicopteros*).) In such a case, 'it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264] (*Cornelison*); see also *Helicopteros, supra,* 466 U.S. at p. 414 [80 L.Ed.2d at pp. 410-411].) Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction. (See *Burnham* [v. *Superior Court of Cal., Marin County* (1990)] 495 U.S. at p. 618 [109 L.Ed.2d at p. 644] (plur. opn. by Scalia, J.).)" (*Vons Companies, Inc.* v. *Seabest Foods, Inc., supra,* 14 Cal.4th at pp. 445-446.)

 In this case the causes of action, if any, arise out of the business undertaken by Computerpeople, Inc., through RPM Systems in California.

That is, Serafini's claimed contacts with the state arise solely out of his corporation's contacts with the state. Thus, Khadir's claim of general jurisdiction over Serafini as a natural person tenders the question whether a natural person who acts only on behalf of a corporation "does business" within the meaning of *Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485].[3] The analogy between the corporation and its agents is attenuated by the fact that an agent for a corporation is generally not personally liable for contracts made on behalf of a disclosed principal. (See Rest.2d Agency, §§ 320, 328; also see, e.g., *Techno Corp.* v. *Dahl Associates, Inc., supra*, 521 F.Supp. 1036, 1037; see generally, e.g., *Taylor-Rush* v. *Multitech Corp.* (1990) 217 Cal.App.3d 103, 115 [265 Cal.Rptr. 672].) As appears we need not resolve this question because even on the assumption that Serafini's contacts with California in "doing business" as an agent of the corporation could be ascribed to him as a person, the contacts would not be sufficient to give rise to general jurisdiction over Serafini. We explain.

 "(1) A state has power to exercise judicial jurisdiction over an individual who does business in the state with respect to causes of action arising from the business done [by the individual] in the state.

"· . . . . . . . . . . . . . . . . . . . . . . .

"(3) A state has power to exercise judicial jurisdiction over an individual who does business in the state with respect to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction." (Rest.2d Conf. of Laws, § 35.)

There is a dearth of case law on general jurisdiction over natural persons. The Restatement Second of Conflict of Laws says a state "should have a similar range of [general] jurisdiction" over nonresident natural persons as is provided with respect to foreign corporations. (Rest.2d Conf. of Laws, § 35, com. e, p. 145.) Assuming that is so as to natural persons acting on their own behalf, a different problem is raised when a natural person acts only as the disclosed agent of a corporation.

General jurisdiction in the case of a nonresident corporation is viewed analogously to the presence of a natural person. A nonresident corporation which is doing business of a sufficiently substantial and continuous

---

[3] *Techno Corp.* v. *Dahl Associates, Inc.* (W.D.Pa. 1981) 521 F.Supp 1036 and other Pennsylvania cases (e.g., *Bucks County Playhouse* v. *Bradshaw* (E.D.Pa. 1983) 577 F.Supp. 1203, 1210) assert that a natural person who acts not in his individual capacity, but only on behalf of a corporation, in the capacity of an officer, employee, or director of the corporation does not "do business" in the state within the meaning of *Perkins* v. *Benguet Mining Co., supra*, 342 U.S. 437.

nature is treated as if it had a "physical presence" in the forum, placing it within the jurisdiction of the state as to causes of action independent from that business. (See generally, *Burnham* v. *Superior Court of Cal., Marin County* (1990) 495 U.S. 604, 619 [110 S.Ct. 2105, 2115, 109 L.Ed.2d 631, 645].) When the corporation ceases to do business in the state, there is no longer any general jurisdiction, i.e., jurisdiction as to causes of action independent of that business. (See, Rest.2d Conf. of Laws, § 35, com. d, p. 144.)

Under any view of the scope of "doing business" as a corporate agent, jurisdiction cannot be gained over Serafini on the assumption the "doing business" contacts could be personally ascribed to him. His material contacts with the state arise exclusively from his role as an agent of RPM Systems. But Serafini had unequivocally ceased his activities as a director and officer of Computerpeople, Inc. before the service of process in this action. Assuming for the sake of discussion that he had been virtually present and "doing business" because of his activities as an agent of the corporation, when he ceased that activity he absented himself and terminated any general jurisdiction of California over him. (See Rest.2d Conf. of Laws, § 35, com. d, p. 144.)

## II

### *Specific Jurisdiction*

This relegates Khadir to a claim of specific jurisdiction over Serafini. The resolution of the claim turns on whether Khadir tendered evidence which shows that Serafini caused a tort to be committed against Khadir in California for which Serafini would be personally liable.

Khadir submits that Serafini is subject to specific jurisdiction because the evidence shows: "Serafini was a part of the active management of RPM Systems with Defendants Freudenberg and Wheeler, particularly with regard to personnel decisions, and therefore must have been aware of and ratified the actions regarding a dispute over payroll and payment to Plaintiff, and must also have been aware of the ongoing illegally retained employees which also led to the tortious and discriminatory conduct against Plaintiff."[4]

As best we can make out, Khadir makes two claims of specific jurisdiction. The first claim is that Serafini directly authorized or actively participated in the tortious conduct alleged in the complaint, i.e., the facts adduced

---

[4]Khadir cryptically rephrases the argument as follows: "Serafini must have been aware of and actively committed wrongful acts by acquiescing and/or participating in the personnel policies and payment decisions that eventually placed Plaintiff in untenable positions causing emotional distress and discrimination against Plaintiff on the basis of his race, national origin, and religious practices."

show that Serafini's involvement in the management of Computerpeople and RPM Systems was so pervasive as to belie Serafini's testimony that he played no role in the alleged decisions to harass Khadir and then to terminate his employment. The second claim is that Serafini caused acts in California, i.e., illegal hiring of persons in violation of federal immigration law, from which the alleged tortious harassment and termination of employment arose.

■ Notwithstanding that he is not present in the state, a natural person who commits a tort while acting on behalf of a corporation is subject to the jurisdiction of the state when the delict is intended to inflict tortious harm within the state. (See, e.g., *Taylor-Rush* v. *Multitech Corp.*, *supra*, 217 Cal.App.3d at pp. 115-118; Rest.2d Conf. of Laws, § 37.) A natural person may also be subject to jurisdiction if the delict could reasonably be expected to inflict tortious harm within the state. (See Rest.2d Conf. of Laws, § 37.) ■ Under this rubric Serafini would be subject to jurisdiction if the evidence afforded an inference that he personally committed or directed others to commit torts against Khadir for which he would be personally liable.

Serafini argues that there is insufficient evidence affording an inference of such conduct on his part. We agree. Three *potential* tort causes of action are alleged in the complaint—discharge of an employee in violation of public policy, intentional infliction of emotional distress, and harassment of an employee because of race, religious creed, or national origin. Serafini unequivocally denies any such conduct. Khadir suggests that, notwithstanding these denials, the role Serafini played in managing some aspects of RPM Systems gives rise to an inference he "ratified" personnel actions pertaining to Khadir or "participated in" decisions "eventually . . . causing" emotional distress and discrimination. The vagueness of this rejoinder demonstrates that no evidence was adduced which affords an inference that Serafini engaged in or directed tortious conduct against Khadir; there is only speculation that he could have been involved. This does not suffice for specific jurisdiction.

That leaves the claim Serafini caused acts in California, i.e., illegal hiring of persons in violation of federal immigration law, from which the alleged tortious harassment and termination of employment arose. Serafini argues this claim is immaterial because the allegations of the complaint pertaining to illegal hiring and employment are not addressed to him and that, in any event, these allegations have no relationship to the claims that are asserted against him.

The allegations, which are incorporated by reference in the counts addressed to Serafini, assert it was Khadir's complaints concerning the alleged

illegalities which provoked the subsequent infliction of emotional distress and harassment. There does appear to be some relationship between the allegations concerning illegal employment and the claims addressed to Serafini. However, this relationship does not suffice.

The exercise of specific jurisdiction arising from a cause of action in tort derives from the requirement that the defendant answer in this forum a cause of action alleging liability in tort against him. We accept for the nonce Khadir's conclusory averment[5] that Serafini hired and paid employees knowing they were illegally employed. However, this does not state a claim against Serafini; it is not a delict which breaches a primary right possessed by Khadir; it is not materially connected to an alleged cause of action in tort because it affords no ground for asserting Serafini's liability to Khadir. Accordingly, it cannot form the basis for the exercise of specific jurisdiction to adjudicate Serafini's liability in tort.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

A peremptory writ of mandate shall issue directing the superior court to vacate its ruling denying the motion to quash and to determine whether to continue the motion until resolution of the discovery dispute or grant the motion, applying the legal rules and guidelines set forth in this opinion. The alternative writ is discharged.

Davis, J., and Morrison, J., concurred.

---

[5]But see *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1760 [46 Cal.Rptr.2d 191]; but see generally, 6 Witkin, California Procedure (4th ed. 1997) Proceedings Without Trial, sections 202-205, pages 614-618.

*See footnote, 1, *ante*, page 74.